UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT JAMES GREEN,<br><br>            Plaintiff,<br><br>v.<br><br>KOOTENAI COUNTY SHERIFF'S OFFICE, et al.,<br><br>            Defendants. | Case No. 1:24-cv-00040-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

Pro se prisoner Robert James Green (Plaintiff) has submitted an In Forma Pauperis Application and a Complaint. Dkts. 3, 1. The Court has reviewed the Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. § 1915.

## REVIEW OF COMPLAINT

**1. General Standard of Law for Review of Prisoner Complaints**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Because pro se prisoners are not lawyers, the Court liberally construes the pleadings to determine whether a case should be dismissed.

Under 28 U.S.C. §§ 1915 and 1915A, the Court is required to dismiss some or all

of the claims in a complaint for any of the following reasons:

- "insufficient facts under a cognizable legal" theory, *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984), meaning that the factual assertions, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

- "lack of a cognizable legal theory," *Robertson*, 749 F.2d at 534, including that the complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B), or the Court applies a procedural bar sua sponte (on its own) that is often raised as an affirmative defense, *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024) (affirming dismissal based on *Heck v. Humphrey*, 512 U.S. 477 (1994));

- Frivolousness, maliciousness, 28 U.S.C. § 1915(e)(2)(B); or

- seeking monetary relief from a defendant who is immune from such relief, *id*.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**2. Background**

On January 24, 2022, Plaintiff's brother and Plaintiff's girlfriend separately called law enforcement officers reporting that Plaintiff may be suicidal. Plaintiff's brother's call to officers was prompted by two telephone calls from Plaintiff inviting his brother to play Russian roulette with Plaintiff. Plaintiff's girlfriend's call resulted from Plaintiff's call to

her to say good-bye before he committed suicide. Plaintiff alleges that, while he may not have been suicidal when he called his brother, as the incident evolved he began drinking alcohol and became suicidal over the next few hours. He asserts he "had succumbed to serious depression," "had not had any meaningful rest in nearly a week," and was "delirious." Dkt. 1 at 1-3.

Plaintiff refused any aid from officers responding to the calls. He alleges that officers should have left him alone in the basement of his home. If they had done so, he surmises, he would have been fine the next morning. During the incident, he demanded that officers leave him alone over thirty times. Dkt. 1 at 5-7. Plaintiff asserts that the defendant police officers violated his rights by escalating the situation, luring him outside, and causing him to feel like he had to protect himself and his property. In particular, he asserts:

- "Deputy Norris was aware that Plaintiff was consuming alcohol and was armed with the intent of ending his own life, yet still chose to escalate the Plaintiff into an angry rage he would not [have] otherwise achieved."

- "Defendants knowingly and willfully denied Plaintiff his substantial rights as guaranteed under the United States Constitution when the[y] surrounded his home with law enforcement officers causing him to believe he was under clear and present threat of arrest though he had committed no crime."

- "Plaintiff though he contemplated suicide had made no threat to anyone outside of those he sincerely believed were preparing to illegally encroach his liberties, law enforcement officers bent on imposing their will upon him."

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

- "Defendants, through Deputy Norris, had convinced Plaintiff that upwards of twenty (20) police officers and deputies had surrounded his home."

- "This choice by State actors placed Plaintiff under direct threat of immediate harm that he would not have otherwise faced."

- "The culmination of Defendant's [sic] choices ended in Plaintiff being shot seven (7) times and suffering sever[e], permanent, life altering injuries that have left him with enormous medical debts, and permanent disabilities."

Dkt. 1 at 5-9.

### 3. Particular Standards of Law

Plaintiff asserts that officers responding to the calls for a "welfare check" violated his Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution, and that the county failed to train them in suicide de-escalation. The Court considers both federal and state law, because police officers are subject to the laws of both jurisdictions.

#### A. Fourth Amendment

Under the Fourth Amendment to the United States Constitution, a person may not be unnecessarily detained without arrest. *Rivas v. United States*, 368 F.2d 703, 711 (9th Cir. 1966). Warrantless searches and seizures are presumed to be unreasonable and therefore violate the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id*.

Where a crime is not initially at issue, a search or detention may be reasonable under

an officer's "community caretaking" function. *State v. Cutler*, 143 Idaho 297, 302, 141 P.3d 1166, 1171 (Idaho Ct. App. 2006). The community caretaking function arises from the duty of police officers to help citizens in need of assistance and is totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. *Id.*, 143 Idaho at 302, 141 P.3d at 1171; *State v. Maddox*, 137 Idaho 821, 824, 54 P.3d 464, 467 (Idaho Ct. App. 2002); *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 457 (Idaho 2004).

The "community caretaking function" permits an officer to detain a person when there is a present need for assistance, but does not permit unlimited searching of the detainee. *State v. Adams*, No. 50841, 2025 WL 2301197, at *4 (Idaho Aug. 11, 2025) (rejecting the State's argument that police officers are authorized to conduct a complete search of a patient taken into civil protective custody under Idaho Code section 66-329 [involuntary commitment proceedings], similar to that allowed during a search incident to arrest); *State v. Hollist*, 170 Idaho 556, 561, 513 P.3d 1176, 1181 (Idaho 2022) (detention not permitted if no present need for assistance).

Police officers have a duty under the community caretaking function to investigate medical emergencies. *See In re Clayton*, 113 Idaho 817, 818, 748 P.2d 401, 402 (Idaho 1988). "Officers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception." *Michigan v. Fisher*, 558 U.S. 45, 49 (2009) (per curiam).

A potentially suicidal person constitutes a medical emergency. "A heightened suicide risk or an attempted suicide is a serious medical need" for the purposes of the

INITIAL REVIEW ORDER BY SCREENING JUDGE - 5

Fourteenth Amendment right to medical treatment. *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010), *vacated sub nom. City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011).

In analyzing the community caretaking function, Idaho courts have adopted a totality of the circumstances test. *State v. Wixom*, 130 Idaho 752, 754, 947 P.2d 1000, 1002 (Idaho 1997). The federal constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding circumstances. *Id*., 130 Idaho at 754, 947 P.2d at 1002. Reasonableness is determined by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen. *State v. Godwin*, 121 Idaho 491, 495, 826 P.2d 452, 456 (Idaho 1992).

Most federal circuit courts have analogized seizures on mental health grounds to a criminal arrest, requiring that seizures in the mental health context be supported by probable cause. *Ahern v. O'Donnell*, 109 F.3d 809, 817 (1st Cir. 1997) (collecting cases). Similarly, many federal courts have required probable cause in the community caretaking context. *See, e.g., Cloaninger ex rel. Cloaninger v. McDevitt*, 555 F.3d 324, 334 (4th Cir. 2009) (involving officer's "welfare check" at residence after a doctor's 911 call reported a possible suicide attempt); *Roberts v. Spielman*, 643 F.3d 899, 905-06 (11th Cir. 2011) (holding that "a showing of probable cause in the mental health seizure context requires only a probability or substantial chance of dangerous behavior, not an actual showing of such behavior").

Plaintiff is correct that there is little or no state or federal precedent on how to apply

community caretaking case law to suicidal persons who do not appear to pose a threat to anyone but themselves and where officers do not enter the person's home.

B. Fifth Amendment

The Ninth Circuit Court of Appeals has clarified that the "Fifth Amendment prohibits the *federal* government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process *by the several States*." *Castillo v. McFadden*, 399 F.3d 993, 1002 n. 5 (9th Cir. 2005) (emphasis added). Other guarantees of the Fifth Amendment are applicable to the states through the Fourteenth, such as the prohibitions against self-incrimination and double jeopardy, but none of those are implicated by Plaintiff's pleadings. *See Duncan v. State of La.*, 391 U.S. 145, 148 (1968) (self-incrimination); *Benton v. Maryland*, 395 U.S. 784, 794 (1969) (double jeopardy).

C. Fourteenth Amendment

The Fourteenth Amendment Due Process Clause governs involuntary confinement of the mentally ill by state actors who are medical personnel. *O'Connor v. Donaldson*, 422 U.S. 563, 573–76 (1975). But where law enforcement officers are involved in seizing and detaining a person "for whatever purpose," the Fourth Amendment is used for the analysis. *Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991), *as amended on denial of reh'g* (Apr. 1, 1992) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490

U.S. at 395.

    D. <u>Law governing Claims related to Facts Supporting a Criminal Conviction</u>

To the extent that the facts supporting a civil cause of action are the same facts that supported a criminal conviction of the plaintiff, the claims are deemed premature and barred by *Heck v. Humphrey*, 512 U.S. 477, 489 (1994). In *Heck*, the United States Supreme Court determined that, where a favorable verdict in a civil rights action would necessarily show that a plaintiff's criminal conviction or sentence is invalid, he must first demonstrate that the conviction or sentence has been reversed or expunged. *Id.* As a result, "a claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id*. On the other hand, if the claims, even if successful, will not demonstrate that an outstanding criminal judgment against the plaintiff is invalid, the action should be allowed to proceed. *Id.* at 487. "[A]pplying *Heck* requires looking at the factual basis for a conviction, regardless of whether that conviction is based on a jury verdict or a guilty plea." *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1008 (9th Cir. 2022).

    4. Discussion

Based on the standards of law set forth above, Plaintiff has stated no Fifth Amendment claim. His Fourteenth Amendment claim will be analyzed under the Fourth Amendment. His Fourth Amendment claims involve a somewhat novel legal issue, and, therefore, he may find that he cannot prevail against a qualified immunity defense.[1]

---

[1] In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate

But, regardless of the underlying merits discussion of his claims, the Court concludes that Plaintiff may not present the merits of his claims in a civil rights action because the facts are the same facts that led to his criminal conviction. Plaintiff has alleged that officers violated his rights when they allegedly knowingly or recklessly "escalated his state of mind, " caused him to believe that armed invasion of his home was imminent, and intentionally pushed him into a drunken rage," causing him to arm himself and act defensively against the officers. Plaintiff implies that there would have been no criminal convictions had officers not employed unconstitutional actions to cause him to overreact. These allegations place this case within the grasp of *Heck v. Humphrey*. If a jury in this case finds that these facts are true, a favorable jury verdict would imply that the criminal conviction for assault on the officers is invalid. Hence, Plaintiff cannot proceed until he overturns his conviction in a court of proper jurisdiction.

Because Plaintiff's failure-to-train claims against the County are derivative of the claims against the officers, these claims also are subject to the *Heck* favorable termination rule. In other words, his allegations—but for the lack of county training, officers would not have lured him out of his home and escalated the situation to cause him to wield a firearm against the officers—show that a favorable verdict on this claim would imply that Plaintiff was not at fault and the conviction is invalid.

---

clearly established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). A qualified immunity analysis consists of two prongs: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Because of the alleged causal link between Defendant's acts and Plaintiff's criminal convictions, the Court find that the claims are premature. Plaintiff may not proceed presently, but his claims will be dismissed without prejudice, meaning he can bring them at a later date if he clears the *Heck* barriers from his path.

Plaintiff should be aware that the statute of limitations for a § 1983 claim that is dependent upon a prior state court action to invalidate a conviction does not begin to run until the conviction is reversed, expunged or declared invalid, because the § 1983 cause of action does not arise until the state court action is completed. *See Heck*, 512 U.S. at 489.

## ORDER

**IT IS ORDERED** that Plaintiff's claims are DISMISSED without prejudice.

DATED: September 3, 2025

_____
David C. Nye
Chief U.S. District Court Judge